FILED

NOV 12 2014

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JAMES EDWARD THOMAS,

Petitioner,

v.

WARDEN SUSAN HUBBARD,

Respondent.

No. C 12-1019 LHK (PR)

ORDER GRANTING MOTION TO DISMISS PETITION; DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY

Petitioner, a state prisoner proceeding *pro se*, sought a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his 2006 conviction and sentence in the Superior Court of Santa Clara County. On June 4, 2014, the court granted in part and denied in part respondent's motion to dismiss petitioner's petition as procedurally defaulted. The court issued a further briefing schedule. On September 3, 2014, respondent filed a response to the remaining claims, arguing that the petition is untimely and also that the claims fail on the merits. Although given an opportunity, petitioner has not filed a reply or a traverse. Having considered all the papers submitted, the court GRANTS respondent's motion to dismiss, and DENIES the petition for writ of habeas corpus.

**MOTION TO DISMISS AS UNTIMELY**

**I. Background**

On March 10, 2006, petitioner was sentenced to a term of 25 years to life, consecutive to a 5 year term in state prison as a result of being convicted of first degree burglary and misdemeanor

Order Granting Motion to Dismiss Petition; Denying Petition for Writ of Habeas Corpus; Denying Certificate of Appealability
P:\PRO-SE\LHK\HC.12\Thomas019mtdhcfinal.wpd

prowling and peeping.[1] (Memorandum of Points and Authorities at 1.) On October 5, 2007, petitioner filed an original state habeas petition in the California Supreme Court. (Doc. No. 36 at 2.) On March 18, 2008, the California Supreme Court denied the petition. Petitioner filed a direct appeal to the California Court of Appeal. (*Id.*; Memorandum of Points and Authorities at 2.) The California Court of Appeal affirmed. Petitioner thereafter filed a petition for review, and on July 8, 2009, the California Supreme Court denied review. (Memorandum of Points and Authorities at 2.)

On February 10, 2010, petitioner filed a federal habeas petition in this court in *Thomas v. Kramer*, No. 10-0591 LHK (N.D. Cal.). The court determined that the petition was a mixed petition, and directed petitioner to choose how he would like to proceed. Ultimately, because of a failure to prosecute, on November 9, 2011, *Thomas v. Kramer*, No. 10-0591 LHK (N.D. Cal.), was dismissed without prejudice.

Prior to the dismissal of *Thomas v. Kramer*, No. 10-0591 LHK (N.D. Cal.), petitioner apparently returned to state court on June 22, 2011 and filed a state habeas petition in the California Supreme Court. (Memorandum of Points and Authorities at 2.) On November 2, 2011, the California Supreme Court denied the petition. (*Id.*)

On January 11, 2012,[2] petitioner delivered the underlying federal petition to prison officials for mailing.

**II. Discussion**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") became law on April 24, 1996, and imposed for the first time a statute of limitations on petitions for a writ of habeas corpus filed by state prisoners. Under the AEDPA, petitions filed by prisoners challenging non-capital state convictions or sentences must be filed within one year of the latest of the date on

---

[1] Petitioner had also admitted that he sustained five prior convictions for residential burglary, one prior conviction for assault with intent to commit rape, and another prior conviction for rape. *See People v. Thomas*, No. H029978, 2008 WL 316246, *5 (Cal. App. 2008).

[2] The petition was file-stamped on February 29, 2012. The court notes that on the proof of service attached to the petition, petitioner avers that he delivered the petition to prison officials for mailing on January 11, 2012. At the same time, however, petitioner states that he executed the same proof of service on January 14, 2012. The court will use the earlier date of January 11, 2012, as the filing date; however, this discrepancy of 3 days makes no difference to the result of whether the underlying petition is timely.

which: (1) the judgment became final after the conclusion of direct review or the time passed for seeking direct review; (2) an impediment to filing an application created by unconstitutional state action was removed, if such action prevented petitioner from filing; (3) the constitutional right asserted was recognized by the Supreme Court, if the right was newly recognized by the Supreme Court and made retroactive to cases on collateral review; or (4) the factual predicate of the claim could have been discovered through the exercise of due diligence. 28 U.S.C. § 2244(d)(1). The time during which a properly filed application for state post-conviction or other collateral review is pending is excluded from the one-year time limit. 28 U.S.C. § 2244(d)(2).

The one-year period generally will run from "the date on which the judgment became final by conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). Here, that date was 90 days after the California Supreme Court denied review. *See Miranda v. Castro*, 292 F.3d 1063, 1065 (9th Cir. 2002) (where petitioner did not file a petition for certiorari, his conviction became final 90 days after the California Supreme Court denied review). Thus, petitioner's conviction became final on October 6, 2009, and he had until October 6, 2010, to file his federal habeas petition. *See Patterson v. Stewart*, 251 F.3d 1243, 1246 (9th Cir. 2001). Petitioner's federal petition, filed on January 11, 2012, therefore, is untimely unless petitioner can establish statutory or equitable tolling.

The one-year statute of limitations is tolled for the "time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). Here, there is no basis for statutory tolling. Petitioner's state habeas petition, filed October 5, 2007, and denied on March 18, 2008, was filed prior to petitioner's conviction becoming final. Thus, it has no effect on the statute of limitations. *See Waldrip v. Hall*, 548 F.3d 729, 735 (9th Cir. 2008). Petitioner's state habeas petition, filed on June 22, 2011, was filed approximately 8 months after the limitations period had already expired. Thus, it has no effect on the statute of limitations. *See Ferguson v. Palmateer*, 321 F.3d 820, 823 (9th Cir. 2003) ("[S]ection 2244(d) does not permit the reinitiation of the limitations period that has ended before the state petition was filed," even if the state petition was timely filed). Accordingly, petitioner is not entitled to statutory tolling.

The Supreme Court has determined that Section 2244(d) is subject to equitable tolling in

Order Granting Motion to Dismiss Petition; Denying Petition for Writ of Habeas Corpus; Denying Certificate of Appealability
P:\PRO-SE\LHK\HC.12\Thomas019mtdhcfinal.wpd 3

appropriate cases. *Holland v. Florida*, 130 S. Ct. 2549, 2560 (2010). "[A] petitioner is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Id.* at 2562 (internal quotation marks omitted). The Ninth Circuit has held that the petitioner bears the burden of showing that this "extraordinary exclusion" should apply to him. *Miranda v. Castro*, 292 F.3d 1063, 1065 (9th Cir. 2002). Once a petitioner is notified that his petition is subject to dismissal based on AEDPA's statute of limitations and the record indicates that the petition falls outside the one-year time period, the petitioner bears the burden of demonstrating that the limitations period was sufficiently tolled under statutory or equitable principles. *See Smith v. Duncan*, 297 F.3d 809, 814 (9th Cir. 2002). Here, petitioner does not set forth any argument for equitable tolling.

Accordingly, the petition, filed over one year after the statute of limitations deadline, must be dismissed as untimely under 28 U.S.C. § 2244(d).

## RESPONSE ON THE MERITS

### I. Factual Background[3]

Petitioner was charged with: (1) first degree burglary on February 25, 2005, in which it was alleged that petitioner entered an inhabited dwelling house with the intent to commit theft and/or rape; and (2) misdemeanor prowling and peeking. *People v. Thomas*, No. H029978, 2008 WL 316246, *3 (Cal. App. 2008). It was also alleged that petitioner sustained eight prior "strike" convictions. *Id.*

At trial, the evidence showed that on February 25, 2005, Francisco Garcia was spending the night at the apartment of Sarah Doe, Garcia's girlfriend. *Id.* at *1. At around 3:00 in the morning, Garcia heard a noise and turned around to see petitioner standing right next to the bed, looking at Sarah. *Id.* Petitioner was wearing a baseball cap that Garcia had left on a couch in the corner of the room. *Id.* Garcia began yelling at petitioner, demanding to know who he was and what he was doing there. *Id.* Petitioner merely stared at Garcia and said nothing. *Id.* When Garcia jumped out of bed, petitioner ran into the bathroom and slammed the door. *Id.* By the time Garcia opened the door to the bathroom, he found the bathroom window open, and petitioner gone. *Id.* Garcia exited

---

[3] The factual background is taken from the California Court of Appeal's opinion. Only the facts relevant to petitioner's underlying claims are included.

the apartment to go after petitioner and saw him, still wearing the baseball hat. *Id.* Garcia called the police and continued to follow petitioner. *Id.* At one point, petitioner looked back at Garcia and threw a rock at him. *Id.* Garcia saw petitioner enter a driveway and go behind a house. *Id.* Garcia waited in front of the house for the police. *Id.* When the police arrived, they found petitioner hiding in a small bathroom off a porch, crouched down in the corner and seemingly attempting to be quiet. *Id.* Garcia identified petitioner as the intruder and also identified Garcia's hat as the one petitioner had taken. *Id.* Police officers testified that petitioner was "oddly quiet," and was generally compliant with the officers' commands. *Id.* at *2. No burglary tools were found, nor was there evidence of any "rape kit." *Id.*

On March 6, 2005, around 10:00 p.m., James Kroeker was sitting in his car across the street from his house. *Id.* He saw petitioner go down a driveway a few houses down the street and then approach the house next to Kroeker's and began "looking in various windows." *Id.* Petitioner looked through some side windows and then went around to the front and looked through some of those windows as well. *Id.* Kroeker called the police. *Id.* When the police arrived, petitioner was walking down Kroeker's driveway. *Id.* The police arrested petitioner and found an unused condom and two small rocks in petitioner's pocket. *Id.* Petitioner was also wearing a wristwatch that appeared to be a woman's design. *Id.* Petitioner did not have any burglary tools, and was cooperative and compliant with the police. *Id.*

The jury found petitioner guilty of first degree burglary and misdemeanor prowling and peeping. On March 10, 2006, petitioner was sentenced to a term of 25 years to life plus a five-year enhancement.[4]

## II. Standard of Review

This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be

---

[4] Petitioner's sentence was subject to the "Three Strikes" law because petitioner had also admitted that he sustained five prior convictions for residential burglary, one prior conviction for assault with intent to commit rape, and another prior conviction for rape. *See Thomas*, No. H029978, 2008 WL 316246 at *5. In addition, petitioner's prior conviction for forcible rape added a 5-year enhancement under California Penal Code § 667(a). *Id.* (Resp. Ex. 7 at 201-02.)

Order Granting Motion to Dismiss Petition; Denying Petition for Writ of Habeas Corpus; Denying Certificate of Appealability
P:\PRO-SE\LHK\HC.12\Thomas019mtdhcfinal.wpd 5

granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.

"[A] federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, the application must also be unreasonable." *Id.* at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *Id.* at 409.

The only definitive source of clearly established federal law under 28 U.S.C. § 2254(d) is in the holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court decision. *Id.* at 412. Clearly established federal law is defined as "the governing legal principle or principles set forth by the Supreme Court." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). Circuit law may be "persuasive authority" for purposes of determining whether a state court decision is an unreasonable application of Supreme Court precedent, however, only the Supreme Court's holdings are binding on the state courts, and only those holdings need be "reasonably" applied. *Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003).

## III. Discussion

### A. Ineffective assistance of counsel

Petitioner argues that counsel rendered ineffective assistance when counsel stated, "I know for a fact that the defendant was the intruder in that burglarized apartment building and he only stole

Order Granting Motion to Dismiss Petition; Denying Petition for Writ of Habeas Corpus; Denying Certificate of Appealability
P:\PRO-SE\LHK\HC.12\Thomas019mtdhcfinal.wpd 6

that baseball cap to facilitate his getaway." (Pet. at 27.) Petitioner asserts that appointed counsel had a conflict of interest because, by making such a statement, it was clear that counsel did so because he was being paid by the county to render legal services and thus, counsel did not have petitioner's best interest in mind. (*Id.*) Thus, argues petitioner, counsel rendered ineffective assistance based on a conflict of interest.

As an initial matter, respondent argues that counsel never made such a statement at trial. Unfortunately, petitioner does not provide a citation to the trial transcript where counsel was alleged to have made the concession, and the court cannot locate it. Respondent admits, however, that counsel did argue during closing arguments that petitioner was only guilty of misdemeanor prowling, but not burglary. RT 172, 174.

The Sixth Amendment's right to conflict-free counsel is violated only if the conflict "adversely affected" trial counsel's performance. *Alberni v. McDaniel*, 458 F.3d 860, 870 (9th Cir. 2006). Under normal circumstances, a habeas petitioner alleging ineffective assistance of counsel ordinarily must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Mickens v. Taylor*, 535 U.S. 162, 166 (2002). However, prejudice may be presumed where a petitioner shows counsel "actively represented conflicting interests." *Id.*; *Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980). "[A]n actual conflict of interest mean[s] precisely a conflict that affected counsel's performance – as opposed to a mere theoretical division of loyalties." *Mickens*, 535 U.S. at 171 (emphasis omitted).

However, the Supreme Court has applied the presumption of prejudice only to multiple-representation cases; it is an open question in the Supreme Court whether this presumption of prejudice would apply in other contexts. *Earp v. Ornoski*, 431 F.3d 1158, 1184 (9th Cir. 2005). "*Mickens* explicitly concluded that [the presumed prejudice rule of *Cuyler*] was limited to joint representation, and that any extension of [*Cuyler*] outside of the joint representation at trial context remained, as far as the jurisprudence of [the Supreme Court was] concerned, an open question." *Foote v. Del Papa*, 492 F.3d 1026, 1030 (9th Cir. 2007).

Here, the facts do not suggest a conflict of interest caused by joint representation. Thus, because no clearly established Supreme Court law extends the presumption of prejudice to a conflict of interest as suggested by petitioner, the California Supreme Court's rejection of petitioner's

Order Granting Motion to Dismiss Petition; Denying Petition for Writ of Habeas Corpus; Denying Certificate of Appealability
P:\PRO-SE\LHK\HC.12\Thomas019mtdhcfinal.wpd 7

conflict of interest claim could not be "contrary to, or an unreasonable application of, any clearly established Federal law as determined by the United States Supreme Court" unless petitioner establishes prejudice under *Strickland v. Washington*, 466 U.S. 668, 694 (1984).

In order to prevail on a Sixth Amendment ineffectiveness of counsel claim under *Strickland*, petitioner must establish two things. First, he must establish that counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms. *Id.* at 687-88. Second, he must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

Petitioner provides no non-conclusory argument that counsel performed in a deficient manner. The absence of evidence that counsel performed in a constitutionally inadequate way cannot overcome the presumption that counsel's conduct was within the range of reasonable professional advice. *See, e.g.*, *Burt v. Titlow*, 134 S. Ct 10, 17 (2013) (concluding that without any evidence demonstrating that counsel gave inadequate advice regarding withdrawal of a guilty plea, there is strong presumption that counsel's performance was not deficient). Moreover, here, the evidence showed that petitioner indeed was in Sarah Doe's house uninvited, and peeked in several residential windows, uninvited, late at night in James Kroeker's neighborhood. The evidence clearly showed that petitioner was guilty of misdemeanor prowling.[5] Counsel's decision, therefore, to concede petitioner's misdemeanors was an apparent strategic decision to gain credibility with the jury so that the jury would accept counsel's additional argument that petitioner did not have the specific intent to commit theft or burglary when he entered Sarah Doe's house. *See United States v. Swanson*, 943 F.2d 1070, 1075-76 (9th Cir. 1991) ("in some cases a trial attorney may find it advantageous to his client's interests to concede certain elements of an offense or his guilt of one of several charges."); *cf. Yarborough v. Gentry*, 540 U.S. 1, 9 (2003) (calling client a "bad person, lousy drug addict, stinking thief, jail bird," not ineffective assistance of counsel because "[b]y

---

[5] California Penal Code § 647(i) provides that one shall be guilty of the misdemeanor: [w]ho, while loitering, prowling, or wandering upon the private property of another, at any time, peeks in the door or window of any inhabited building or structure, without visible or lawful business with the owner or occupant.

candidly acknowledging his client's shortcomings, counsel might have built credibility with the jury and persuaded it to focus on the relevant issues in the case."). Because counsel's concession to the misdemeanors was a strategic decision, that decision fell within the wide range of reasonably professional assistance.

Moreover, petitioner has set forth no argument that but for counsel's concession, there was a reasonable probability that the outcome would have been different. As stated above, the evidence clearly demonstrated that petitioner was peeking through several windows uninvited. Even without counsel's concession on those misdemeanors, there is no reasonable probability that the outcome would have been different.

Accordingly, the state court's decision was not contrary to or an unreasonable application of clearly established Supreme Court law.

B. Prosecutorial misconduct

Petitioner claims that the prosecutor committed misconduct during closing argument because the prosecutor stated that he had proof that petitioner was a chronic schizophrenic, mentally unbalanced, and mentally deranged petty thief who "goes around stealing small insignificant things to get a high on or his rocks off." (Pet. at 30-31.) Petitioner argues that this open-ended statement was made without any factual support. (*Id.*)

A defendant's due process rights are violated when a prosecutor's misconduct renders a trial "fundamentally unfair." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986); *Smith v. Phillips*, 455 U.S. 209, 219 (1982) ("the touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor"). Under *Darden*, the first issue is whether the prosecutor's remarks were improper; if so, the next question is whether such conduct infected the trial with unfairness. *Tan v. Runnels*, 413 F.3d 1101, 1112 (9th Cir. 2005).

Here, however, a review of the prosecutor's closing argument reveals no statement of this kind in the record. RT 163-171, 185-191. Moreover, petitioner does not cite to the record to show where the prosecutor made such a statement. Without any evidence of improper remarks, the court cannot say that the state court's denial of this claim was contrary to or an unreasonable application of clearly established Supreme Court law.

Order Granting Motion to Dismiss Petition; Denying Petition for Writ of Habeas Corpus; Denying Certificate of Appealability
P:\PRO-SE\LHK\HC.12\Thomas019mtdhcfinal.wpd 9

## CONCLUSION

Respondent's motion to dismiss the petition is GRANTED. Petitioner's petition for writ of habeas corpus is DENIED. The Clerk shall terminate all pending motions and close the file.

## CERTIFICATE OF APPEALABILITY

For the reasons set out in the discussion above, petitioner has not shown "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right [or] that jurists of reason would find it debatable whether the district court was correct in its procedural ruling" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Accordingly, a certificate of appealability is DENIED.

**IT IS SO ORDERED.**

DATED: 11/10/14

Lucy H. Koh
LUCY H. KOH
United States District Judge

Order Granting Motion to Dismiss Petition; Denying Petition for Writ of Habeas Corpus; Denying Certificate of Appealability
P:\PRO-SE\LHK\HC.12\Thomas019mtdhcfinal.wpd 10